T.C. Memo. 2010-273

UNITED STATES TAX COURT

THOMAS AND DEBORAH MCINTYRE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24581-07, 21997-08.   Filed December 13, 2010.

<u>Terri A. Merriam</u>, <u>Jaret R. Coles</u>, and <u>Adam J. Blake</u>,[1] for
petitioners.

<u>Nhi T. Luu</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:   These consolidated cases are affected items
proceedings stemming from petitioners' involvement in Hoyt cattle
partnerships almost twenty years ago.   Petitioners claimed Hoyt

---

[1]Jaret R. Coles and Adam J. Blake both filed motions to
withdraw as petitioners' counsel.   We granted both motions.

partnership losses totaling $826,337 on the returns for 1994 and 1996 (the relevant years).  After concessions[2] the sole issue is whether petitioners are liable for the section 6662 accuracy-related penalties for those years.[3]  Rather than raise a substantive defense, petitioners raise a procedural argument. They argue they should not be held liable for the penalties because they argue the penalties are based on invalid returns. We find petitioners are liable for the penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners resided in Colorado at the time they filed the petition in docket No. 24581-07. They resided in Missouri at the time they filed the petition in docket No. 21997-08.

Petitioners' Background

Petitioner husband (petitioner) has a bachelor's degree in business management with a minor in finance from Texas Tech.  He has held various business-related positions, including manager of a savings and loan company, mortgage banker and part owner of a

---

[2]Petitioners concede they are liable for the sec. 6662 accuracy-related penalty for 1995.

[3]All section references are to the Internal Revenue Code in effect for the relevant years.

temporary staffing business.  Petitioner sold his interest in the

temporary staffing business for a substantial amount in 1994.

Petitioners' Investment With Hoyt

Petitioner learned about the Hoyt organization[4] in 1994.  He

attended a seminar on investing in the stock market and he

anticipated having funds to invest.  Another seminar attendee,

who had previously invested with Hoyt, informed petitioner of the

Hoyt investment opportunity.

Petitioner paid the Hoyt organization $50 for promotional

materials pertaining to the cattle partnerships.  The materials

focused heavily on the investors' "tax savings."  One of the

documents described the investment several times as a "tax

shelter," which petitioner admits was a "red flag" that warranted

further investigation.  The promotional materials also warned

that a change in tax laws or an Internal Revenue Service (IRS)

examination could subject the investor to penalties and interest

on the Federal tax liability.  Petitioner did not consult with a

---

[4]Jay Hoyt organized and promoted to numerous investors, and operated as a general partner, a total of almost 100 cattle-breeding partnerships between 1971 and 1992.  He also formed partnerships to help manage or operate aspects of the Hoyt organization that included preparing tax returns for each investor.  We determined in 2000 that Hoyt cattle operations lacked economic substance.  Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003).  The Commissioner subsequently removed all Hoyt income and deductions from the investor partnership returns, and then he made computational adjustments to the individual partners' returns following the respective partnership proceedings.

tax consultant, attorney or any other independent adviser before investing with Hoyt.

Petitioner discussed the Hoyt cattle partnerships with Jay Hoyt and Dave Barnes[5] by telephone. Petitioner believed that Jay Hoyt's certification as an enrolled agent meant that the Hoyt cattle operations were legitimate. Petitioner never met, however, with anyone from the Hoyt organization in person, nor did he visit any of the Hoyt ranches. He spoke with only one of the two or three references the Hoyt organization provided. The reference merely confirmed everything that petitioner had been told about the Hoyt investment.

Petitioner orally informed the Hoyt organization in 1995 of his decision to invest in the cattle partnerships. The Hoyt organization sent petitioner paperwork, but petitioner does not recall what documents, if any, he signed. Petitioner did not have any adviser or attorney review the paperwork.

Petitioners paid the Hoyt organization $122,217 in 1996.[6] They were partners in Durham Genetic Engineering 1986-2 (DGE 86-2), Durham Genetic Engineering 1986-3 (DGE 86-3), Durham Genetic

---

[5]Dave Barnes was an employee of the Hoyt organization. See Keller v. Commissioner, T.C. Memo. 2006-131, affd. in part and reversed in part 556 F.3d 1056 (9th Cir. 2009).

[6]This amount includes the $50 payment petitioners made for the promotional materials.

Engineering 1986-4 (DGE 86-4), and Shorthorn Genetic Engineering 1990-1 (SGE 90-1) in 1996.

<u>Petitioners' Returns for the Relevant Years</u>

Petitioners had their personal accountant prepare their individual Federal income tax return for each of the relevant years. These accountant-prepared documents did not include any Hoyt partnership items. Petitioners then submitted the accountant-prepared documents to the Hoyt organization for the addition of Hoyt partnership items, including losses. The Hoyt organization added the Hoyt losses to the documents and attached Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., before returning them to petitioners for filing with the IRS. These Hoyt-prepared returns and Schedules K-1 were the only documents petitioners ever received from the Hoyt organization after they "invested." Petitioners never contacted the Hoyt organization to request, nor were they ever given, copies of the partnership returns for any of their Hoyt investments.

Petitioners filed with the IRS what the Hoyt organization directed them to file as a return for 1996 (the 1996 filing). The 1996 filing included a Form 1045, Application for Tentative Refund, which attached a Form 1040, U.S. Individual Income Tax Return, for 1996 and Schedules K-1 for the Hoyt partnerships for 1996. Petitioners signed the Form 1045 under penalty of perjury but did not sign the attached Form 1040. Petitioners mailed the

1996 filing via certified mail from Hempstead, Texas. They claimed Hoyt partnership losses totaling $862,337 on the Form 1040. This amount of partnership losses was almost seven times the amount petitioners had "invested" with the Hoyt organization that year. The partnership losses reduced petitioners' tax liability for 1996 to $392 and generated a $680,181 net operating loss that petitioners carried back to 1994. Petitioners submitted a $392 check with the 1996 filing as payment of the tax liability for 1996.

Respondent processed the 1996 filing as a return for 1996 and a net operating loss carryback to 1994. Respondent accepted the $392 check as payment for the 1996 tax liability. Respondent issued and mailed to petitioners a $269,499 refund for 1994.[7]

Petitioners filed no other return for 1996.[8]

The Deficiency Notice

Decision documents were entered in Hoyt partnership proceedings for taxable year 1996. Respondent made computational adjustments to petitioners' tax liabilities for each of the years

---

[7]Petitioners had reported a $1,055,125 tax liability on the original return for 1994.

[8]Petitioners attempted to file on Apr. 15, 2002, an amended return for 1996 that did not report any Hoyt losses or income. The amended return is irrelevant, however, because it was filed almost five years after the original 1996 return had been processed.

1994 through 1996 that were based on the decisions entered in the partnership proceedings. Respondent disallowed portions of petitioners' distributive shares of losses from the partnerships, resulting in a $64,256 underpayment of Federal income tax for 1996. Respondent also disallowed the net operating loss carryback for 1994 and determined a $269,196 underpayment for that year. Respondent determined petitioners were liable for a section 6662(a) accuracy-related penalty for each of the three years. Respondent issued petitioners affected items notices for the deficiencies and penalties at issue. As previously mentioned, petitioners concede they are liable for the accuracy-related penalty for 1995. The penalties are $53,839.20 for 1994 and $9,306.20 for 1996.

## Discussion

The sole issue for decision[9] is whether petitioners are liable for the accuracy-related penalties[10] for 1994 and 1996.

---

[9]We have already determined that we have no jurisdiction over respondent's computational adjustments of the deficiencies in these affected items proceedings. See McIntyre v. Commissioner, T.C. Memo. 2009-305.

[10]A taxpayer is liable for an accuracy-related penalty for any portion of an underpayment attributable to, among other things, a substantial understatement of income tax. Sec. 6662(a) and (b)(2). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs. Respondent has met his burden of production with respect to petitioners' substantial understatement of income tax.

Petitioners acknowledge that they did not act reasonably or in good faith as a defense against the penalties.[11]  They conceded after trial that they have not established reasonable cause or good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 446 (2001); sec. 1.6664-4(a), Income Tax Regs.  Instead petitioners argue that they are not liable for the accuracy-related penalties for 1994 and 1996 because of a procedural defect.  They argue that the 1996 filing respondent processed was an invalid return.  They claim that the Form 1040 included with the 1996 filing is invalid because it is unsigned.[12]  Petitioners argue that, by extension, they cannot be held liable for the penalties for 1994 because those penalties are attributable to a net carryback from the unsigned Form 1040.

_____

[11]The accuracy-related penalty under sec. 6662(a) does not apply to any portion of an underpayment if the taxpayer proves that there was reasonable cause for his or her position and that he or she acted in good faith with respect to such portion.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 446 (2001); sec. 1.6664-4(a), Income Tax Regs.  The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The taxpayer bears the burden of proving reasonable cause. Higbee v. Commissioner, supra at 446.

[12]Petitioners also argue that the 1996 return is invalid because they were not partners in any Hoyt partnerships in 1996. We held in our previous opinion, McIntyre v. Commissioner, supra, that we lack jurisdiction in this affected items proceeding to consider petitioners' status as partners in 1996 because it is a partnership item to be addressed, if at all, at the partnership level.  Accordingly, we will not consider petitioners' partnership-level argument in this affected items proceeding.

First and foremost, petitioners' argument regarding the validity of the 1996 filing confuses the issue.[13]  Respondent properly processed the entire 1996 filing as a return for 1996 and a net carryback to 1994.  We distinguish this case from the cases deciding whether sufficient information was provided by the taxpayer for the Commissioner to compute the correct tax liability for the year at issue.  See Commissioner v. Lane-Wells Co., 321 U.S. 219 (1944) (unsigned return that discloses no information relating to a taxpayer's income not a return); Germantown Trust Co. v. Commissioner, 309 U.S. 304, 308 (1940) (incorrect form nevertheless constituted a return because it contained all the data from which a tax could be computed and assessed although it did not purport to state any amount due as tax); Richardson v. Commissioner, 72 T.C. 818, 823-824 (1979) (unsigned return Form 1040 with attachments containing frivolous arguments did not constitute a tax return).

Moreover, we disagree that the 1996 filing was invalid. Petitioners signed the Form 1045 included in the 1996 filing under penalty of perjury.  Petitioners also submitted payment of the $392 tax liability reported on the 1996 filing.  Respondent

---

[13]Petitioners also attempt to distance themselves from the Hoyt organization by challenging the validity of the 1996 filing. They argue that they were duped by Hoyt and that the 1996 filing was made without their consent.  Hoyt did not file the return on petitioners' behalf, however.  The return was mailed from petitioners' home in Hempstead, Texas, rather than from any of the Hoyt office locations.

accepted the 1996 filing and properly processed it as the return for 1996 and a refund claim for 1994.  Consistent with this processing, respondent accepted the $392 check for liability and issued petitioners the $269,499 refund for 1994.  Petitioners cannot now argue that the 1996 filing was invalid as a defense against the penalties.  Furthermore, petitioners have failed to establish that they otherwise filed a valid return for 1996.

Petitioners have not raised a valid partner-level defense against the penalties.  As petitioners have conceded, their actions constituted a lack of due care and failure to do what a reasonable or prudent person would have done.  We accordingly sustain respondent's determination that petitioners are liable for the accuracy-related penalties for the relevant years.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and petitioners' concessions,

<u>Decisions will be entered for respondent</u>.